**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HILLSMAN MODULAR MOLDING, INC.,**

          **Plaintiff,**

-vs-                                        **Case No. 6:02-cv-1493-Orl-28JGG**

**HILLTECH CUSTOM INJECTION**
**MOLDING, INC., WILLIAM HILL,**

          **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration after an evidentiary hearing on May 25, 2005 to determine the amount of attorney's fees to be awarded to the Plaintiff, Hillsman Modular Molding, Inc. ["Hillsman"] in conjunction with its motion for default judgment [Docket No. 38].

**I.    Procedural History**

Hillsman filed the instant suit on December 13, 2002, alleging that the Defendants, Hilltech Custom Injection Molding, Inc., and William Hill, committed, *inter alia*, trademark violations under the Lanham Act. Docket No. 1. The Defendants answered, Docket No. 4, and engaged in discovery, but counsel for the Defendants reported that he was no longer able to contact his clients, and the case stopped moving forward. Docket No. 17. After the Court granted a motion to compel Hill to appear for a deposition, Docket No. 21, Hill again failed to appear. Docket No. 30. As a sanction, the Court struck the Defendants' pleadings and permitted Hillsman to move for a default judgment. Docket No. 37.

As part of its motion for a default judgment, Hillsman sought to recover costs and attorney's fees. On April 28, 2005, the Honorable John Antoon II determined that Hillsman was entitled to recover its attorney's fees under the Lanham Act and referred the matter to the undersigned for consideration of the amount. Docket No. 59. On May 25, 2005, the undersigned conducted an evidentiary hearing on the matter. Though the notice setting the hearing directed Hill to appear if he disputed the amount sought, Docket No. 60, neither he nor his counsel attended the hearing.

## II.     Legal Standards

Historically, the federal courts have analyzed demands for attorney's fees pursuant to *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[1] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorney's fees to comport with decisions of the United States Supreme Court. *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). *Norman* adopted the lodestar approach for calculating attorney's fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson*, 488 F.2d 714. *Norman*, 836 F.2d at 1298-99. The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992). Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington*

---

[1] Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717 - 19.

*v. Dague*, 505 U.S. 557, 559-60 (1992) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The lodestar approach also governs the attorney's fees analysis under fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 561-62 (1992) (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the *Norman* lodestar approach in determining the request for attorney's fees.

### 1. Reasonable Hourly Rate

The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The party seeking attorney's fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781, citing *Norman*, 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman*, 836 F.2d at 1299.

The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because experience and reputation are a mirror image of skill. *Norman*, 836 F.2d at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Norman*, 836 F.2d at 1300 - 1301. Organization means that counsel plans effective discovery devices and does not use

them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman*, 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman*, 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Norman*, 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman*, 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Norman*, 836 F.2d at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

### 2.     Reasonable Hours Expended

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman*, 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment" -- exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Norman*, 836 F.2d at 1301-02, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A court must not consider an attorney's skill at this stage as this would constitute a double penalty -- the rate would first be decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

The fee applicant bears the burden of documenting the appropriate number of hours. *Norman*, 836 F.2d at 1303, citing *Hensley*, 461 U.S. at 437; *United States v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F.Supp. 166, 170 (M.D. Fla. 1995).  Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397 - 98; *Norman*, 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1303.

### III.   Application

Hillsman originally sought to recover attorney's fees and costs in the amount of $77,173.44. Docket No. 61 at 3.  To address concerns previously raised by Judge Antoon, Hillsman reduced this amount in several ways.  Hillsman reduced the hourly rates sought for one of its fifth-year associates (Richard Whiteley) from $265.00 an hour to $175.00 an hour, and for two partners (John Barr and Jeff Whittle) from $375.00 an hour to $345.00 an hour.  Docket No. 61 at 3 - 4.[2]  Hillsman eliminated fee requests for work done by law clerks, paralegals, office staff, and two of the three associates who had worked on the case.  Docket No. 61 at 3.  After these adjustments, Hillsman now seeks to recover $37,749.50 in fees for work performed by its Texas counsel (Whiteley, Barr and Whittle) and $16,500.00 for work performed by Filburn, as well as $1,551.36 in costs.  Docket No. 61 at 4.

---

[2] Hillsman did not alter the $200-per-hour rate sought for the work of its Florida counsel, Mark Filburn.

The Court must first determine a reasonable hourly rate. After reviewing the affidavits and time sheets filed by Hillsman, Docket No. 61, as well as the argument of Hillsman's counsel at today's hearing and the undersigned's own knowledge of the fees charged in the Orlando legal market, the Court finds that the rates now sought are reasonable. In this area, a fifth-year associate such as Whiteley can reasonably bill at $175 per hour and a partner such as Filburn can command $200 per hour. The $345-per-hour fees for partners with intellectual property (Whittle) and litigation (Barr) expertise, though high, are not unreasonable for this market.

The Court now must determine the amount of hours reasonably expended in the litigation. After the reductions discussed above, Hillsman seeks to recover for 76.5 hours of work performed by Whiteley, 16.25 hours performed by Barr, 54.35 hours performed by Whittle, and 82.5 hours performed by Filburn. Although this case resulted in a default judgment, Hillsman was forced to litigate it extensively for many months, filing discovery, a motion to compel, a motion for sanctions, and a motion for summary judgment. The default judgment, Docket No. 37, was entered after the trial date set in the March 2003 scheduling order. Docket No. 15. In addition, Hillsman does not seek to recover for work performed in litigating its entitlement to attorney's fees, or the amount of those fees. Docket No. 61 at 2. Given the amount of work Hillsman's counsel was obligated to perform before the entry of default judgment, the Court finds that the hours now sought for the work of attorneys Whiteley, Barr, Whittle and Filburn were reasonably expended in this litigation. Thus, the Court will recommend an award of $37,749.50 in fees for work performed by Hillsman's Texas counsel and $16,500.00 for work performed by Filburn, for a total of $54,249.50.

However, the affidavits and bills submitted by Hillsman do not offer sufficient support for an award of costs in the amount now sought. The costs are not broken out in a way that permits the

Court to review them individually or to determine with certainty which costs Hillsman seeks to recover. At least some of the costs that can be identified from the bills — such as $1.50 per page for faxes, and 50 cents per page for copies — appear to be too high. Other costs, such as those for online legal research, appear to fall outside the boundaries which this Court may award under 28 U.S.C. § 1920. Without more detailed information, the Court cannot recommend an award of costs in the amount now sought by Hillsman. It is therefore

**RECOMMENDED** that Hillsman be awarded attorney's fees in the amount of $37,749.50 for its Texas counsel and $16,500.00 for its Florida counsel, for a total of $54,249.51. It is further

**RECOMMENDED** that this amount be awarded without prejudice to Hillsman's ability to separately seek an award of costs. Any such bill of costs or motion for an award of costs should be accompanied by a memorandum of law citing authority for an award of costs under 15 U.S.C. § 1117 in excess of 28 U.S.C. § 1920 costs.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

DONE AND ORDERED in Orlando, Florida on May 25, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable John Antoon II
Counsel of Record
Courtroom Deputy